## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KELLY PINDER, | * CIVIL ACTION NO. |
| | * |
| Plaintiff, | * |
| v. | * |
| | * |
| STATE OF CONNECTICUT, | * DECEMBER 23, 2020 |
| DEPARTMENT OF MENTAL | * |
| HEALTH AND ADDICTION | * |
| SERVICES, | * |
| | * |
| Defendant. | * |
| | * |

### COMPLAINT

The plaintiff, Kelly Pinder (hereinafter the "plaintiff" or "Pinder"), by his counsel, Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, complaining of the defendant herein, respectfully alleges as follows:

### NATURE OF THE CLAIMS

1.     This action is brought to remedy discrimination on the basis of race and disability, violations of Family and Medical Leave Act of 1993 § 105, 29 U.S.C. § 2615 ("FMLA") Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq.* ("Title VII"), the Connecticut Fair employment Practices Act ("CFEPA"), and intentional and negligent infliction of emotional distress, all impacting the terms and conditions of employment and retaliation for opposition to unlawful practices, and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

2.     The plaintiff seeks monetary relief including, but not limited to: back pay, front pay, compensatory damages, attorney's fees and the costs of this action, and any

{!02105779.DOC; v.}                    1

and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

## JURISDICTION AND VENUE

3.     Jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.     This action arises in part under the Family and Medical Leave Act of 1993 § 105, 29 U.S.C. § 2615 ("FMLA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.* ("Title VII").

5.     Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) in that the plaintiff resides in Connecticut, his claims arose in this district, and substantial actions occurred in this district.

## EXHAUSTION OF REMEDIES

6.     The plaintiff filed a timely claim with the Connecticut Commission of Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").

7.     The Plaintiff's complaint with the CHRO was assigned CHRO No. 1940461 and his EEOC claim was assigned Case No. 16A201901400.

8.     The CHRO issued a Release of Jurisdiction to Pinder on September 28, 2020.  (Ex. A.)

9.     The plaintiff has commenced this lawsuit within ninety (90) days of the plaintiff's receipt of the Release of Jurisdiction issued to him by the CHRO and as a result, the plaintiff has fully complied with the administrative pre-requisites of Title VII, CFEPA and all other applicable statutes.

{!02105779.DOC; v.}                    2

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

10.     All conditions precedent to this lawsuit have been fulfilled.

## PARTIES

11.     The plaintiff, Kelly Pinder, is a male resident of Connecticut who resides in Middletown, Connecticut, whose race is African-American.

12.     The defendant, State of Connecticut, Department of Mental Health and Addiction Services ("DMHAS") is a public agency of the State of Connecticut having a principal place of business at 410 Capitol Avenue, Hartford, Connecticut.

## FACTS

13.     DMHAS employs at least 15 employees in the State of Connecticut.

14.     The Plaintiff is an African American male and he began working for DMHAS on April 5, 2002.

15.     The Plaintiff's most recent position was Mental Health Worker (MHA-1).

16.     He worked at the Whiting forensic Hospital, Dutcher 1 North, in Middletown.

17.     In or around March, 2017, Pinder was diagnosed as suffering from post-traumatic stress disorder ("PTSD") arising out of several traumatic events, but most prominently, finding a client dead in the showers at Whiting.

18.     Pinder also had several traumatic issues arise in the last couple of years related to his family.

19.     Pinder is an alcoholic and, to his own detriment, used alcohol to self-medicate at times in an effort to deal with his PTSD symptoms.

20.     Nonetheless, he also sought treatment through prescription medications and therapy.

{!02105779.DOC; v.}                    3

21. On December 6, 2018, Pinder was arrested for driving under the influence of alcohol.

22. This was his second DUI arrest.

23. Pinder pleaded guilty to the offense on or about June 4, 2019.

24. At the time of his plea, Pinder did not understand something there to be a fixed period of incarceration attached to his sentence. Pinder was not sentenced at that time and his hope after the plea was that he could avoid any jail time because he was undergoing active treatment for his alcoholism.

25. Upon the recommendation of his treating physician, Pinder requested FMLA leave on July 9, 2019.

26. He requested that the leave be granted to begin on July 30, 2019.

27. Prior to July 30, 2019, Pinder was advised that his paperwork was in order and, therefore, he began his leave on July 30, 2019.

28. On August 5, 2019, a week following the start of his FMLA leave, Pinder attended a hearing at the Middlesex Superior Court concerning his DUI sentencing.

29. At that time, he was offered a sentence of 2 years in jail with the execution of the time served suspended after 240 days.

30. Upon the advice of counsel, he agreed to that proposal an aspect of which was the he was immediately incarcerated at the Hartford Correctional Center.

31. While incarcerated, Pinder attended alcohol addiction meetings in order to address his alcoholism.

32. He has been sober since his incarceration.

{!02105779.DOC; v.}                                      4

33.    Pinder also attended group therapy sessions to address his PTSD while incarcerated.

34.    As such, the treatment for the medical condition Pinder sought FMLA leave continued during his incarceration.

35.    Pinder has continued his therapy and alcohol addiction treatment since his incarceration ended.

36.    On or about August 19, 2019, DMHAS sent correspondence to Pinder's home address by certified mail.

37.    The correspondence indicated that Pinder's request for FMLA leave had been denied.

38.    The letter stated that the "reason for this denial is based on the fact that it appears that the Serious Health Condition listed on your medical certificate is not the reason you are unable to report for work."

39.    The letter further concluded that Pinder was unable to report to work due to his incarceration.

40.    DMHAS placed Pinder on unauthorized leave without pay and indicated that he was subject to dismissal from his job if he was absent for five working days without authorization.

41.    DMHAS provided a deadline of August 29, 2019, to confirm Pinder's ability to return to work.

42.    That deadline was clearly set in bad faith.

43.    This deadline was provided despite the fact that DMHAS knew that Pinder was incarcerated and absolutely unable to report to work.

{!02105779.DOC; v.}                        5

44.     Moreover, the correspondence was sent to Pinder's home address and he was unaware of the letter until well after the deadline due to his incarceration.

45.     Pinder's request for FMLA leave was supported by his physician, who attested to his need for leave as a result of his medical condition.

46.     By denying Pinder's request and determining that the reason he needed the leave was his incarceration, DMHAS had to conclude that Pinder's physician had provided false information in support of his request.

47.     DMHAS not only was aware of the traumatic events that led to Pinder's PTSD, he also spoke directly to Julianne Wheeler, the Principal Human Resources Specialist at Whiting Forensic Hospital during the months preceding his request for leave about his PTSD and how he was dealing with the disability.

48.     In fact, Pinder and Wheeler had an open discussion about his options in addressing both his health issues and family issues with which he was dealing.

49.     Among the considerations Pinder discussed with Ms. Wheeler was applying for FMLA leave.

50.     Of course, Pinder was not able to respond to DMHAS's August 19, 2019, correspondence due to his incarceration.

51.     Even if he had been aware of the letter and able to respond, he would not have been able to return to work by the deadline because of his incarceration.

52.     DMHAS had no basis to determine that Pinder's incarceration precluded his ability to treat and deal with his serious health condition.

53.     In fact, Pinder was able to seek the treatment he needed during his incarceration to address both his PTSD and his alcoholism.

{!02105779.DOC; v.}                    6

54.    Upon information and belief, despite knowing that he was incarcerated, DMHAS took no steps to investigate the terms of Pinder's incarceration.

55.    Upon information and belief, DMHAS took no steps to investigate whether Pinder continued to treat his PTSD and alcoholism while incarcerated.

56.    Upon information and belief, DMHAS made no attempts to contact Pinder in any manner other than the August 19, 2019, letter.

57.    Upon information and belief, DMHAS made no attempt to contact Pinder's physician to discuss the necessity for his leave.

58.    Upon information and belief, DMHAS failed to obtain any medical opinion indicating that his leave was not justified or that he would be unable to obtain the necessary treatment while incarcerated.

59.    Pinder is presently able to return to work in his prior position and has been for an extended period of time.

60.    Pinder has made good faith efforts to return to his employment with DMHAS, but the defendant has denied those efforts.

61.    Other similarly-situated DMHAS employees, who have been incarcerated or subject to criminal investigation, have been allowed to retain their jobs or return to their jobs at Whiting forensic Hospital.

62.    Those other employees were all caucasian.

63.    As such, Pinder was treated disparately and differently from his Caucasian co-workers due to his race.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

64.     Finally, DMHAS was aware of Pinder's PTSD, which is a disability recognized by both the Americans with Disabilities Act and the Connecticut Fair Employment Practices Act.

65.     DMHAS was aware of Pinder's need for treatment of this condition as he had open discussions about how best to address his disability and potential leave to address the issue.

66.     Nonetheless, when Pinder appropriately sought leave to address the condition, DMHAS retaliated against him by terminating his employment.

67.     That retaliation was related to both his disability and his request for FMLA leave.

68.     The Plaintiff's professional reputation and personal stature within DMHAS's structure and outside has been damaged by DMHAS's wrongful and discriminatory acts.

69.     As a result of the foregoing, the Plaintiff suffered, and will continue to suffer, mental, physical, and emotional distress, some of which may result in the need for medical treatment, loss of enjoyment of life, damage to his personal and professional reputation, loss of earning capacity and other financial losses.

## Count One
## Race Discrimination in Violation of Title VII

70.     Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

71.     By the above acts and practices, DMHAS has discriminated against Pinder on the basis of his race in violation of Title VII when it terminated his employment and treated him in a disparate manner as compared to Caucasian.

{!02105779.DOC; v.}                    8

72.     Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

73.     DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

74.     Pinder has incurred attorney's fees in pursuit of these claims.

## Count Two
### Disability Discrimination in Violation of Title VII

75.     Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

76.     By the above acts and practices, DMHAS has discriminated against Pinder on the basis of his disability in violation of Title VII.

77.     Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

78.     DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

79.     Pinder has incurred attorney's fees in pursuit of these claims.

## Count Three
### Retaliation in Violation of Title VII

80.     Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

{!02105779.DOC; v.}                    9

81.     The defendant retaliated against the plaintiff in violation of Title VII, for making a complaint of race discrimination, supporting the complaints of his co-workers and for filing complaint with the CHRO and EEOC.

## Count Four
### Race Discrimination in Violation of CFEPA

82.     Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

83.     By the above acts and practices, DMHAS has discriminated against Pinder on the basis of his race in violation of the Connecticut Fair Employment Practices Act when it terminated his employment and treated him in a disparate manner as compared to Caucasian.

84.     Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

85.     DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

86.     Pinder has incurred attorney's fees in pursuit of these claims.

## Count Five
### Disability Discrimination in Violation of CFEPA

87.     Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

88.     By the above acts and practices, DMHAS has discriminated against Pinder on the basis of his disability in violation of the Connecticut Fair Employment Practices Act.

89.     Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

90.     DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

91.     Pinder has incurred attorney's fees in pursuit of these claims.

## Count Six
## Retaliation in Violation of CFEPA

92.     Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

93.     The defendant retaliated against the plaintiff in violation of CFEPA, for making a complaint of sexual harassment, supporting the complaints of his co-workers and for filing a sexual harassment complaint with the CHRO and EEOC.

## Count Seven
## Negligent Infliction of Emotional Distress

94.     Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

95.     Defendant knew or should have known that its conduct in subjecting the plaintiff to a hostile work environment and retaliating against him for making a complaint of sexual harassment in violation of Title VII and CFEPA involved an unreasonable risk

{!02105779.DOC; v.}                    11

of causing severe emotional distress to the plaintiff and that such distress might result in illness or bodily harm.

96.    As a result of the defendant's negligence, the plaintiff has suffered severe emotional distress.

## Count Eight
### Violation of Family and Medical Leave Act

98.    Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

99.    Pinder was an FMLA-eligible employee.

100.   DMHAS is an employer, as defined in the FMLA.

101.   Pinder was entitled to take FMLA leave.

102.   Pinder gave notice to his employer of his intention to take leave.

103.   Pinder was denied FMLA benefits to which she was entitled.

104.   Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

105.   DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

106.   Pinder has incurred attorney's fees in pursuit of these claims.

## Count Nine
### Retaliation in Violation of Family and Medical Leave Act

107.   Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

108.   Pinder exercised rights protected under the FMLA.

109.   Pinder was qualified for his position with DMHAS.

110.   Pinder suffered an adverse employment action by the denial of his claim and termination of his employment.

111.   The adverse action, the denial of the claim and the termination, occurred under circumstances giving rise to an inference of retaliatory intent.

112.   By the above acts and practices, DMHAS has discriminated against Gena Pinder on the basis of his disability in violation of the Connecticut Fair Employment Practices Act.

113.   Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

114.   DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

115.   Pinder has incurred attorney's fees in pursuit of these claims.

### Count Ten
### Violation of Connecticut Family and Medical Leave Act

116.   Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

117.   Pinder was an FMLA-eligible employee.

118.   DMHAS is an employer, as defined in the FMLA.

119.   Pinder was entitled to take FMLA leave.

120.   Pinder gave notice to his employer of his intention to take leave.

{!02105779.DOC; v.}                    13

121.  Pinder was denied FMLA benefits to which she was entitled.

122.  Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

123.  DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

124.  Pinder has incurred attorney's fees in pursuit of these claims.

### Count Eleven
### Retaliation in Violation of Family and Medical Leave Act

125.  Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

126.  Pinder exercised rights protected under the FMLA.

127.  Pinder was qualified for his position with DMHAS.

128.  Pinder suffered an adverse employment action by the denial of his claim and termination of his employment.

129.  The adverse action, the denial of the claim and the termination, occurred under circumstances giving rise to an inference of retaliatory intent.

130.  By the above acts and practices, DMHAS has discriminated against Pinder on the basis of his disability in violation of the Connecticut Fair Employment Practices Act.

131.  Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320    TEL. (860) 442-4416    JURIS NO. 62114

psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

132.   DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

133.   Pinder has incurred attorney's fees in pursuit of these claims.

### Count Twelve
### Disability Discrimination in Violation of the ADA

134.   Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

135.   By the above acts and practices, DMHAS has discriminated against Pinder on the basis of his disability in violation of the ADA.

136.   Pinder has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

137.   DMHAS engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

138.   Pinder has incurred attorney's fees in pursuit of these claims.

### Count Thirteen
### Retaliation in Violation of ADA

139.   Pinder re-alleges and incorporates by reference Paragraphs 1 through 69 as if fully stated.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

140.    The defendant retaliated against the plaintiff in violation of the ADA, for making a complaint of disability discrimination, supporting the complaints of his co-workers and for filing complaint with the CHRO and EEOC.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that this Court:

1.    take jurisdiction over this matter;

2.    award compensatory and punitive damages as allowed by statute;

3.    award attorney's fees and costs, including expert witness expenses;

4.    grant plaintiff a trial by jury; and

5.    grant such other and further relief as may be just and equitable.

PLAINTIFF,

**KELLY PINDER**

BY:_____

*Theodore W. Heiser, ct23807*
*Suisman, Shapiro, Wool, Brennan,*
*Gray & Greenberg, P.C.*
*2 Union Plaza, Suite 200*
*P.O. Box 1591*
*New London, CT 06320*
*Tele. No.: (860)442-4416*
*Fax No.:  (860) 442-0495*
*Email:  theiser@sswbgg.com*
*His Attorney*

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KELLY PINDER,                          *   CIVIL ACTION NO.
                                       *
                 Plaintiff,            *
        v.                             *
                                       *
STATE OF CONNECTICUT,                  *   DECEMBER 23, 2020
DEPARTMENT OF MENTAL                   *
HEALTH AND ADDICTION                   *
SERVICES,                              *
                                       *
                 Defendant.            *
                                       *

## JURY TRIAL CLAIM

The plaintiff, Kelly Pinder, claims a trial by jury on all claims triable by jury.

                              PLAINTIFF,

                              KELLY PINDER

                              BY:_____
                              *Theodore W. Heiser, ct23807*
                              *Suisman, Shapiro, Wool, Brennan,*
                              *Gray & Greenberg, P.C.*
                              *2 Union Plaza, Suite 200*
                              *P.O. Box 1591*
                              *New London, CT 06320*
                              *Tele. No.: (860)442-4416*
                              *Fax No.: (860) 442-0495*
                              *Email: theiser@sswbgg.com*
                              *His Attorney*

{!02105779.DOC; v.}                17

# EXHIBIT A

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Kelly Pinder
**COMPLAINANT**

CHRO No. 2010376

vs.

EEOC No. 16A-2020-00628

State of CT, Department of Mental Health & Addiction Services
**RESPONDENT**

### RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** September 28, 2020

Tanya A. Hughes, Executive Director

Service:
Complainant's counsel: theiser@sswbgg.com
Respondent's counsel:  noelle.miano@ct.gov