UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KELLY PINDER,
    *Plaintiff*,

v.

CONNECTICUT DEPARTMENT OF
MENTAL HEALTH AND ADDICTION
SERVICES,
    *Defendant*.

No. 3:20-cv-1918 (JAM)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

The plaintiff Kelly Pinder used to work for the defendant Connecticut Department of Mental Health and Addiction Services (DMHAS). He claims that he was fired because of his race, because of his disability, and because of his request for an accommodation for his disability. DMHAS now moves to dismiss. I will deny the motion as to the claim for race discrimination but grant the motion as to all other claims.

**BACKGROUND**

Pinder is an African American male who was employed since 2015 by DMHAS as a Mental Health Worker at the Whiting Forensic Hospital in Middletown, Connecticut ("Whiting").[1] Pinder has post-traumatic stress disorder ("PTSD") which he alleges to be a disability.[2] He has sought treatment for his PTSD through prescription medication and therapy.[3] He has also used alcohol to self-medicate, and he states in his complaint that he is an alcoholic.[4]

---

[1] Doc. #18 at 4 (¶¶ 13, 15).
[2] *Ibid.* (¶ 16).
[3] *Ibid.* (¶ 19).
[4] *Ibid.* (¶ 18).

1

On December 6, 2018, Pinder was arrested for driving under the influence of alcohol.[5] He pleaded guilty to the charge on or about June 4, 2019, but he was not sentenced at that time.[6]

On July 9, 2019, upon the recommendation of his treating physician, Pinder requested leave from Whiting under the Family and Medical Leave Act to begin on July 30, 2019.[7] Before the requested start date, DMHAS advised Pinder that his paperwork was in order, and so Pinder began his leave on July 30, 2019.[8]

On August 5, 2019, Pinder accepted a proposed sentence of two years in jail with the execution of the time served suspended after 240 days.[9] As part of the sentencing agreement, Pinder was immediately incarcerated at the Hartford Correctional Center.[10] While incarcerated, Pinder sought treatment for his alcoholism and attended group therapy sessions to address his PTSD.[11] Pinder was at some point released from custody.[12] Since his release he has continued with therapy and treatment and maintained his sobriety.[13]

Despite knowing that he was incarcerated, DMHAS sent a letter to Pinder's home address on or about August 19, 2019.[14] The letter indicated that Pinder's request for leave was denied.[15] It stated that the "reason for this denial is based on the fact that it appears that the Serious Health Condition listed on your medical certificate is not the reason you are unable to report for work," concluding instead that Pinder was unable to report for work because he was in prison.[16]

---

[5] *Id.* at 5 (¶ 20).
[6] *Ibid.* (¶¶ 22–23).
[7] *Ibid.* (¶¶ 24–25).
[8] *Ibid.* (¶ 26).
[9] *Id.* at 5-6 (¶¶ 27–29).
[10] *Id*. at 6 (¶ 29).
[11] *Ibid.* (¶¶ 30, 32).
[12] *Ibid.* (¶34).
[13] *Ibid.* (¶¶ 31, 34).
[14] *Ibid.* (¶ 35).
[15] *Ibid.* (¶ 36).
[16] *Id.* at 7 (¶¶ 37–38).

With Pinder's request for leave denied, DMHAS placed Pinder on unauthorized leave without pay and informed him that he was subject to dismissal from his job should he miss five work days without authorization.[17] He was given a deadline of August 29, 2019, by which time he was to confirm his ability to return to work.[18] Pinder asserts that the deadline was set in bad faith, because DMHAS knew that he was unable to promptly respond to the letter—let alone return to work—while he remained incarcerated.[19]

At some point thereafter, DMHAS terminated Pinder's employment.[20] Now that he has been released from custody, Pinder represents that he is able to return to his prior position.[21] But DMHAS has denied his good-faith efforts to return to his old job.[22]

Pinder alleges five claims in his amended complaint.[23] Counts One and Two allege claims for race discrimination under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et. seq.*, and under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. Count Three alleges a claim for disability discrimination under CFEPA. Counts Four and Five allege retaliation claims under CFEPA and under Title V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq*. DMHAS now moves to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[24]

---

[17] *Ibid.* (¶ 39).
[18] *Ibid.* (¶ 40).
[19] *Id.* at 7–8 (¶¶ 41–43, 49–50).
[20] *Id.* at 10 (¶ 65).
[21] *Id.* at 9 (¶ 58).
[22] *Ibid.* (¶ 59).
[23] Doc. #18.
[24] Doc. #20.

**DISCUSSION**

The standard that governs a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has explained, this "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* In other words, a valid claim for relief must cross "the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).[25]

In addition, a complaint may not rely on conclusory allegations. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). A complaint that engages in a threadbare recital of the elements of a cause of action but that fails to include supporting factual allegations does not establish plausible grounds for relief. *Ibid.*

### *Title VII race discrimination (Count One)*

Pinder alleges in Count One a Title VII claim for race discrimination. This type of claim requires an employee to allege enough facts to allow for a plausible inference that the employer took adverse action against the employee and that the employer did so because of the employee's race. *See Milledge v. City of Hartford*, 2020 WL 3510813, at *2 (D. Conn. 2020). As the Second Circuit has explained, "the facts alleged in the complaint must provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).

---

[25] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

There are various ways for a plaintiff to allege facts that permit an inference of discriminatory intent. Sometimes a plaintiff may allege that the employer made specific remarks or statements that reveal racial animus. Other times a plaintiff may allege that the employer gave preferential treatment to one or more other employees who were similarly situated to the plaintiff but who were not the same race as the plaintiff. Myriad other factual circumstances might plausibly suggest that a motivating factor for an employer's adverse action was the plaintiff's race. *See id.* at 87 (noting how a plaintiff may meet the burden by citing "direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination").

According to Pinder, he was treated worse than other similarly situated white employees who were allowed to retain their jobs following incarceration. "[N]umerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.*, who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiffs' or how they were treated differently by defendants." *Castillo-Reyes v. Dep't of Soc. Servs.*, 2021 6339253, at *5 (D. Conn. 2021). Here, by contrast, Pinder alleges enough details about the purported comparators: that they are Caucasian, that they held the same or similar positions as him at Whiting, that they were similarly situated (*i.e.*, subject to incarceration), and that DMHAS treated them favorably by allowing them to keep their jobs.

To be sure, Pinder has not alleged that all comparators are necessarily identical in all respects to him. He alleges that he is aware of "similarly-situated DMHAS employees . . . who have been incarcerated *or* subject to criminal investigation."[26] This suggests that his purported

---

[26] Doc. #18 at 10 (¶ 60) (emphasis added); *see also id.* at 11 (¶ 71) ("Caucasian employees who faced [c]riminal charges *and/or* were incarcerated were able to retain or return to their jobs with DMHAS") (emphasis added).

5

comparators may be made up only of white employees who have been criminally investigated but who were *not* incarcerated and absent from work like Pinder. If that were definitively true, I would be hard-pressed to conclude that these comparators were similarly situated. *See Ogidi-Gbegbaje v. Western Express*, 2017 WL 9477692, at *4 (dismissing Title VII disparate treatment claim where plaintiff "makes no reference to the treatment of any other individuals seeking to be rehired after having been arrested and spending six months incarcerated"), *report and rec. adopted*, 2017 WL 4402168 (N.D. Ga. 2017). On the other hand, the complaint goes on to allege that these comparators "have been allowed to retain their jobs or return to their jobs at Whiting Forensic Hospital *following incarceration*." [27]

The complaint alleges enough similarity to plausibly permit an inference of discriminatory intent. All that is required for initial pleading purposes is that the comparators bear a "reasonably close resemblance," and "whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230–31 (2d Cir. 2014). Accordingly, because Pinder has alleged a plausible Title VII claim for race discrimination, I will deny DMHAS's motion to dismiss Count One.[28]

### CFEPA claims (Counts Two, Three, and Four)

Pinder alleges state law claims under CFEPA in Counts Two, Three, and Four for race discrimination, disability discrimination, and disability retaliation. DMHAS argues—without opposition from Pinder—that the Eleventh Amendment to the United States Constitution jurisdictionally precludes these claims from proceeding in a federal court. I agree.

---

[27] *Id.* at 10 (¶ 60) (emphasis added).
[28] If it turns out through discovery that there are no similarly situated comparators at Whiting, then I will be prepared to grant summary judgment against Pinder in the absence of any other evidence that his race was a consideration when DMHAS terminated his employment.

The Eleventh Amendment bars federal courts from hearing suits by private citizens against a State or a state government entity like DMHAS unless Congress abrogates immunity by statutory enactment or unless a State waives its immunity and agrees to be sued in federal court. *See Virginia Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011); *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). Importantly, because "a State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued," the Supreme Court "consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 & n.9 (1984) (emphasis in original).

The State of Connecticut has expressly waived its immunity for CFEPA claims that may be brought against a state agency or official in the Superior Court of Hartford. *See* Conn. Gen. Stat. § 46a-100. But "neither the State nor Congress has waived Eleventh Amendment immunity against CFEPA claims in federal court." *Moore v. Dep't of Correction*, 2017 WL 2413690, at *8 (D. Conn. 2017); *see also Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 578 (D. Conn. 2016) (collecting cases). Accordingly, I will grant the motion to dismiss the CFEPA claims as alleged in Counts Two, Three, and Four.

### *ADA retaliation (Count Five)*

Pinder alleges in Count Five that he was fired in retaliation for requesting leave to treat his PTSD. Title I of the ADA broadly prohibits workplace discrimination on the basis of disability, including failure to grant a reasonable accommodation. *See McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (citing 42 U.S.C. § 12112(a)). Correlatively, Title V of the ADA proscribes retaliation because of a person's opposition to any

act or practice that the ADA prohibits. *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (citing 42 U.S.C. § 12203(a)).

States and state entities like DMHAS have Eleventh Amendment immunity against claims that they have violated Title I of the ADA. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001). Although neither the Supreme Court nor the Second Circuit have decided whether the same holds true for Title V, it is hard to see why it would not. Numerous district courts have ruled that the Eleventh Amendment bars Title V claims against a State, "at least to the extent that those claims are predicated on Title I discrimination claims." *Quadir v. New York State Dep't Labor,* 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014); *see also Schiavone v. New York State Off. of Rent Admin.*, 2018 WL 5777029, at *3 (S.D.N.Y. 2018) (collecting cases). Because Pinder's Title V claim is predicated upon an allegation that he was subject to retaliation for seeking to exercise a right to a reasonable accommodation under Title I, the Eleventh Amendment bars this claim from proceeding in a federal court. Accordingly, I will dismiss the ADA Title V claim as alleged in Count Five.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part the motion to dismiss. The Court GRANTS the motion to dismiss Counts Two, Three, Four, and Five without prejudice to any relief that Pinder might seek for these claims in state court. The Court DENIES the motion to dismiss Count One.

It is so ordered.

Dated at New Haven this 16th day of February 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge